TRYCO ENTERPRISES, INC., Sharon C. Dixon, James Dixon, Crown Staffing, Inc., and Troy Keith Dixon, Appellants

v.

James A. ROBINSON, Appellee.

No. 01–10–00710–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 13, 2012.

---

Maryellen Shea, James Thomas McBride, David Garrett Tatem, Jackson Walker LLP, Houston, TX, for Appellants.

Reginald E. McKamie Sr., Law Office of Reginald E. McKamie Sr., PC, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

This is an action brought by appellee, James A. Robinson, to enforce the judgment entered in his favor in *Robinson v. Texas Workforce Commission and Tryco Enterprises, Inc.,* No. 2000–32376, in the 113th District Court of Harris County, Texas ("the FLSA suit"). Appellants, Tryco Enterprises, Inc. ("Tryco"), Sharon C. Dixon, James Dixon, Crown Staffing, Inc. ("Crown Staffing"), and Troy Keith Dixon, appeal the judgment of the trial court holding them jointly and severally liable for the amounts owed to Robinson by Tryco in the FLSA suit and permitting enforcement of that judgment against the assets of all appellants.

In three issues, appellants argue that the trial court erred: (1) in piercing the corporate veil when it held them jointly and severally liable for using the corporate form to avoid paying the judgment in the FLSA suit; (2) in admitting the prior testimony of a witness given in the trial of the FLSA suit without a showing that the witness was unavailable to testify; and (3) in holding Sharon and James Dixon personally liable for the previous judgment against Tryco in the FLSA suit under Texas Tax Code section 171.255.

We reverse the judgment of the trial court as to Troy Keith Dixon and render judgment that Robinson take nothing by his claims against him. We affirm the judgment as to Tryco, Sharon Dixon, James Dixon, and Crown Staffing.

## Background

The Dixons owned and operated Tryco, a temporary staffing company, as their family business. Sharon and James Dixon served as vice president and president, respectively, of the company, and their son Troy worked there as an employee. From 1996 to 2000, Tryco employed Robinson as a van driver. In 2000, after leaving Tryco, Robinson sued Tryco in the FLSA suit. He alleged that Tryco and the Dixons had violated the Fair Labor Standards Act ("FLSA") by failing to pay him substantial amounts of money for time worked in excess of forty hours per week and that the Dixons had fired him for refusing to return copies of travel logs that he had made to substantiate his claims. The regulatory scheme under which Robinson sued provides, in relevant part, that an employer who violates the provisions of the FLSA may be held accountable for such violations by an action for damages, attorney's fees, and costs in any federal or state court. *See* 29 U.S.C.S. §§ 201–19 (Lexis-Nexis 2010).

On August 13, 2003, after a trial on the merits of his FLSA claim, a jury returned a verdict in favor of Robinson.

Nine days later, on August 22, 2003, Tryco forfeited its corporate privileges for failure to pay its franchise tax.

On September 11, 2003, the trial court signed a judgment against Tryco on the verdict in the FLSA suit for statutory damages, including $58,349 for unpaid

overtime wages, $58,349 for willful violation of the FLSA, $16,558.75 in attorney's fees, $457 in court costs, and $603 in expenses, for a total of $134,316.75, plus prejudgment interest of $30,853.06.

One year later, on September 10, 2004, Robinson sued appellants in this action to enforce the judgment in the FLSA suit, alleging that Tryco forfeited its corporate charter and fraudulently transferred its assets to avoid paying the judgment awarded to him. Robinson alleged that, prior to August 22, 2003—the date on which Tryco forfeited its corporate charter—Sharon and James Dixon transferred the employees and assets of Tryco to Crown Staffing, which they had also formed and for which they also served as vice president and president, "effectively leaving Tryco Enterprises Inc. as an empty shell and defrauding its creditors." He contended that the Dixons' transfer of employees and assets from Tryco to Crown Staffing "was a fraud against the rights of James Robinson, Defendant Judgment Debtors creditor, because the transfer was made with the intent to hinder, delay, or defraud Plaintiff and similarly situated creditors."

On March 23, 2006, the instant action was called to trial. During the ensuing bench trial, Robinson began to present evidence regarding piercing of Tryco's corporate veil. Appellants objected on grounds of lack of notice and surprise. The court ordered a sixty-day recess to allow Robinson to amend his pleadings to allege alter ego and piercing of the corporate veil.

In his second amended pleading, filed on March 27, 2006, Robinson asserted an alter ego theory of liability for the judgment in the FLSA suit, alleging that Tryco and its officers, the Dixons, organized and operated Crown Staffing, through their son Troy, as a mere tool or business conduit and that

"James Dixon was the true owner/manager of both Tryco Enterprises, Inc. and Crown Staffing, Inc." Robinson argued, alternatively, that Sharon and James Dixon organized and operated both Tryco and Crown Staffing as part of a single business enterprise and that James Dixon was the true owner/manager of both Tryco and Crown Staffing. Robinson asked that the trial court find James and Sharon Dixon individually liable "because they were officers of Defendant Tryco Enterprises, Inc. who forfeited corporate privileges on August 22, 2003 prior to the Judgment of September 11, 2003." He stated that "[f]orfeiture of corporate privileges results in liability for corporate officers" under Tax Code section 171.255(a).

On September 27, 2006, trial of this action to enforce the judgment in the FLSA suit resumed. Prior to the taking of testimony, Robinson presented to the court the following exhibits: (1) the September 11, 2003 judgment in the FLSA suit and an abstract of that judgment dated January 4, 2004; (2) a Tryco business card for Birt Edison, which showed that Tryco was a "temporary help service" and that Edison was its Industrial Office Manager and which provided contact information for Tryco; (3) the tax forfeiture of Tryco's corporate privileges dated August 22, 2003, certifying that Tryco's managerial officers were James Dixon, VP, and Sharon C. Dixon, P/S/T; and (4) a determination of forfeiture of Tryco's corporate charter by the office of the Texas Secretary of State, dated August 22, 2003, stating that Tryco had forfeited its corporate privileges and had not revived them within 120 days, that the Comptroller of Public Accounts had determined that Tryco "does not have assets from which a judgment for any tax, penalty, or court costs imposed under Chapter 171 of the [Texas Tax] Code may be satisfied," and that "[i]t is therefore

ordered that [the] charter or certificate of authority of the referenced entity be forfeited without judicial ascertainment and that the proper entry be made upon the permanent files and records of such entity to show such forfeiture as of the date hereof."

The judgment in the FLSA suit, the abstract of that judgment, and Edison's Tryco business card were offered and admitted into evidence without objection. Before the close of evidence, the trial court took judicial notice of Tryco's tax forfeiture and James and Sharon Dixon's status as managerial officers of Tryco.[1]

As his first witness, Robinson called former Tryco and Crown Staffing manager Birthol Edison by reading into the record the testimony given by Edison in the FLSA suit. Appellants' counsel objected to the admission of this testimony as hearsay. Robinson's counsel replied that Edison was Tryco's corporate representative, that the same counsel had represented each of the parties in the FLSA suit, and that Edison had been subject to cross-examination in that proceeding; therefore, his testimony was admissible as an admission of a party opponent. Robinson's counsel also pointed out that Edison's testimony in the FLSA suit had been given in open court, and appellants' counsel agreed that Edison was Tryco's corporate representative in that proceeding. The trial court conditionally admitted the testimony subject to appellants' submitting briefing showing why Edison's testimony from the FLSA suit was not admissible. The court permitted Robinson to read the testimony into the record over appellants' general objection that it was hearsay, and it offered appellants' counsel the opportunity to make specific objections during the

reading. Counsel made no further objections to the testimony and permitted the testimony to be read. Appellants' counsel did, however, object to Robinson's subsequent testimony on the same matters on the ground that Edison's testimony on that subject was already in evidence.

Edison testified that, prior to December 2001, he worked as a manager at Tryco, where his immediate supervisor was Stacy Wilson, one of Tryco's vice presidents. Wilson reported to Tryco's president, James Dixon. At the time of his testimony in the FLSA suit, Edison worked for Crown Staffing as its industrial manager. His immediate supervisor was still Wilson, then one of Crown Staffing's vice presidents. Wilson reported to Crown Staffing's president, James Dixon, who had also been Tryco's president. Edison also testified that Crown Staffing used the same telephone numbers and the same business location as Tryco and that, at Crown Staffing, he provided staffing for several of the same companies as he had at Tryco. At the close of Edison's testimony, Robinson's counsel pointed out that, at the time of the FLSA suit, Edison worked for Crown Staffing and that he testified as a representative of Crown Staffing as well as Tryco. Appellants' counsel did not object to the characterization of Edison as a representative of either Tryco or Crown Staffing.

Robinson also testified in the instant proceeding to enforce the judgment from the FLSA suit. He testified that, after his employment with Tryco ended, he called one of Tryco's telephone numbers and spoke with one of his former Tryco co-workers. About six to seven weeks later, Robinson went to the location where Tryco had operated its business and saw that the

---

1. *See* TEX.R. EVID. 201 (providing for judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); TEX.R. EVID. 803(8) (public records as exception to hearsay rule).

name of the business at that location had been changed to Crown Staffing. At this location, he saw the same two vans he had driven for Tryco, and he also saw many of the same people who had worked for Tryco as well as a few new people. Robinson testified that, other than the new name of the company and a few new employees, nothing about the business location had changed. He also testified that Tryco was the Dixons' family business, that James Dixon was Troy Dixon's father, and that Troy had been an employee of Tryco and was currently Crown Staffing's manager.

At the close of the evidence, Robinson agreed with appellants' counsel and the trial court that he had abandoned his fraudulent transfer claims, leaving only his claims that (1) Sharon and James Dixon were liable to him for Tryco's judgment debt from the FLSA suit under an alter ego or single business enterprise theory because, as officers of Tryco, they had forfeited that corporation's charter and transferred its employees to Crown Staffing, using the corporate fiction of Crown Staffing as a mere conduit of fraud to avoid Tryco's liabilities, and (2) as officers of Tryco, Sharon and James Dixon were liable for the debts of Tryco, including the judgment in his favor in the FLSA suit, under Tax Code section 171.255, which provides for the personal liability of corporate officers for debts of the corporation incurred after forfeiture of its charter.[2]

On July 15, 2010, following a hearing, the trial court entered final judgment against appellants, holding them jointly and severally liable for the amounts awarded to Robinson against Tryco in the judgment rendered in the FLSA suit.

### Hearsay

In their second issue, appellants contend that the trial court erred by admitting Edison's recorded testimony from the FLSA suit. They contend that Edison's prior testimony was inadmissible under Texas Rule of Evidence 801 because it was hearsay. *See* TEX.R. EVID. 801(d) (defining hearsay). They further argue that the testimony did not fall within an exception to the hearsay rule under Texas Rules of Evidence 804(a) and (b)(1) because Robinson failed to present any evidence that Edison was unavailable, that he had made a good-faith effort to locate Edison, or that appellants had an opportunity and similar motive to cross-examine Edison in the FLSA suit, as required for testimony from a former proceeding to qualify as an exception to the hearsay rule. *See* TEX.R. EVID. 804(a), (b)(1) (governing admissibility of former testimony from unavailable witness). Robinson responds that Edison's testimony was not hearsay but instead constituted an admission by a party-opponent, which is excluded from the definition of hearsay and, therefore, need not satisfy the requirements for admission as an exception to the hearsay rule.

■ Appellants' hearsay objection was not preserved and, therefore, presents no ground for reversing the trial court's admission of Edison's testimony. Texas Rule of Appellate Procedure 33.1 requires that, as a prerequisite to presenting a complaint on appeal, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint" and that "the trial court . . . ruled on the . . . objection . . . either expressly or implicitly; or . . . refused to rule . . ., and the complaining party objected to the refusal." TEX.R.APP. P. 33.1.

---

**2.** TEX. TAX CODE ANN. § 171.255 (Vernon 2008).

■ Likewise, Rule of Evidence 103 provides that "error may not be predicated upon a ruling which admits or excludes evidence unless ... a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." TEX.R. EVID. 103. Thus, to preserve error for appeal, the party must have made a timely, specific objection at the earliest possible opportunity. *See Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.,* 176 S.W.3d 307, 316 (Tex. App.-Houston [1st Dist.] 2004, pet. denied), (holding that where attorney did not seek "definitive ruling" on admissibility of evidence of conviction before voir dire, complaint that he was unable to question prospective jurors about bias was not preserved). "An objection is sufficient to preserve error for appeal if it allows the trial judge to make an informed ruling and the other party to remedy the defect, if he can." *Campbell v. State,* 85 S.W.3d 176, 185 (Tex.2002) (quoting *McDaniel v. Yarbrough,* 898 S.W.2d 251, 252 (Tex. 1995)); *see also McKinney v. Nat'l Union Fire Ins. Co.,* 772 S.W.2d 72, 74 (Tex. 1989) (stating that specific objection enables trial court to understand precise grounds and make informed ruling and affords offering party opportunity to remedy defect, if possible); *Lake v. Premier Transp.,* 246 S.W.3d 167, 174 (Tex.App.-Tyler 2007, no pet.) (observing that specific and timely objection is necessary to preserve argument for appellate review and stating, "To be considered timely, an objection must be specific enough to enable the trial court to understand the precise nature of the error alleged and interposed at such a point in the proceedings so as to enable the trial court the opportunity to cure the error alleged, if any").

Here, appellants' counsel made only a general hearsay objection to the admission of Edison's testimony from the FLSA suit.

He did not object with specificity, despite the trial court's invitation to him to do so; nor did he obtain a definitive adverse ruling while the trial court was in a proper position to change its conditional ruling of admissibility and Robinson was in a position to offer other testimony or to subpoena Edison to testify. *See Campbell,* 85 S.W.3d at 185. Thus, appellants did not preserve their hearsay objection, and that objection presents no ground for disregarding Edison's testimony. *See* TEX.R. EVID. 103; TEX.R.APP. P. 33.1; *Campbell,* 85 S.W.3d at 185.

■ Moreover, even if appellants had preserved this complaint for appellate review, they have failed to establish that Edison's testimony in the FLSA suit constituted inadmissible hearsay in the instant enforcement action.

In general, " '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). Hearsay is inadmissible as evidence unless provided by statute or rules, including the hearsay exception rules. TEX.R. EVID. 802. However, inadmissible hearsay admitted without objection is not denied probative value merely because it is hearsay. *Id.*

■ Under Rules 804(a) and (b)(1), prior testimony is admissible as an exception to the hearsay rule if the proponent proves that the declarant was "unavailable" as defined in subsection 804(a); that a good-faith effort was made to locate and present the witness; and that the party against whom the testimony is offered, or one with a similar interest, had an opportunity to cross-examine the witness. *See* TEX.R. EVID. 804(a), (b)(1). However, if the declarant's statement is not hearsay, no hearsay exception is needed to admit the statement, and Rule 804(b)(1) is irrelevant.

*Oyster Creek Fin. Corp.,* 176 S.W.3d at 316–17.

■ Under Rule 801(e)(2), the admission-by-party-opponent exclusion from the definition of hearsay, statements by a party opponent are not hearsay if they are offered against a party and are the party's own statements in either an individual or a representative capacity. TEX.R. EVID. 801(e)(2); *Oyster Creek Fin. Corp.,* 176 S.W.3d at 317; *Worley v. Butler,* 809 S.W.2d 242, 245 (Tex.App.-Corpus Christi 1990, no writ). Specifically, "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." TEX.R. EVID. 801(e)(2)(D). To show that a statement is an admission by a party-opponent under Rule 801(e)(2)(D), the existence of the agency or employment relationship must be established, but there is no requirement that the agency relationship be established with independent corroborating evidence. *See, e.g., Tucker's Beverages, Inc. v. Fopay,* 145 S.W.3d 765, 768–69 (Tex.App.-Texarkana 2004, no pet.).

■ Any statement, including former testimony, may be admitted under one of the admission-by-party-opponent exclusions, regardless of the witness's availability. *Oyster Creek Fin. Corp.,* 176 S.W.3d at 317 (holding that former testimony was not hearsay because it was admission by party opponent, and, therefore, Rules of Evidence did not require trial court to have found witness unavailable as preliminary condition to admitting his testimony). Moreover, if the record discloses any legitimate basis for the trial court's evidentiary ruling, we uphold the ruling. *Id.*

Here, Edison testified in the FLSA suit as a managing employee and corporate representative of both Crown Staffing and, prior to that, Tryco. Edison stated that Crown Staffing continued the same business of providing temporary staff as Tryco at the same location using the same employees under the same managers. Edison's Tryco business card further confirms that Edison was previously employed as an industrial manager at Tryco; and Robinson's testimony confirms that Edison was employed in a managerial position at Crown Staffing at the same location at the time he gave his testimony in the FLSA suit. Robinson's counsel also characterized Edison as a representative of both Tryco and Crown Staffing, and appellants' counsel did not object to this characterization. We conclude that the excerpt of Edison's testimony from the FLSA suit admitted in the instant enforcement action was thus "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *See* TEX.R. EVID. 801(e)(2)(D).

We hold that Edison's recorded testimony from the FLSA suit, the judgment from which Robinson seeks to enforce in this action, was properly admitted under Rule 801(e)(2)(D) as the admission of a party-opponent, and, thus, appellants' hearsay objection is irrelevant. *See Oyster Creek Fin. Corp.,* 176 S.W.3d at 316–17.

We overrule appellants' second issue and turn to the merits of the appeal.

### Liability Under Former Article 2.21 of the Texas Business Corporations Act

In their first issue, appellants argue that the trial court erred in piercing the corporate veil under a single business enterprise or alter ego theory and finding appellants jointly and severally liable for the judgment against Tryco in the FLSA suit. With respect to this issue, appellants con-

tend (1) the Texas Supreme Court has abolished the single business enterprise theory as a means of piercing the corporate veil; (2) Robinson presented no evidence to support an alter ego theory for piercing the corporate veil; and (3) Robinson abandoned his fraudulent transfer theory and pled no other theory to support piercing the corporate veil.

Robinson argues that appellants are jointly and severally liable to him under a single business enterprise theory or alter ego theory for the judgment in the FLSA suit because the Dixons used the corporate forms of Tryco and Crown Staffing as a mere conduit of fraud to avoid paying the judgment awarded to him against Tryco. He contends appellants' actions—forfeiting Tryco's corporate charter for non-payment of franchise taxes after the verdict was delivered in the FLSA suit and before the judgment was entered, transferring Tryco's assets to Crown Staffing on that same day, and leaving Tryco without assets to pay the judgment—justify piercing the corporate veil and holding appellants jointly and severally liable for the judgment in the FLSA suit under former article 2.21 of the Texas Business Corporations Act, now section 21.223 of the Texas Business Organizations Code,[3] because appellants used the corporate fiction to perpetrate a fraud.

Business Organizations Code section 21.223, like its predecessor, article 2.21, provides that an owner of a corporation, such as Tryco, may be held liable to the corporation or its obligees—such as judgment creditors—for any contractual obligation of the corporation or matter arising from a contractual obligation of the corporation—such as, here, the judgment arising from Tryco's breach of its statutory and contractual obligation to pay Robinson wages in compliance with the FLSA—if the owner "was the alter ego of the corporation" and "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the ... owner"—here, the fraud of incorporating Crown Staffing, forfeiting Tryco's corporate charter, and transferring Tryco's assets to Crown Staffing to avoid execution of Robinson's judgment against Tryco. Tex. Bus. Orgs.Code § 21.223(a)(2), (b) (Vernon Supp.2010); *see also SSP Partners v. Gladstrong Invs. (USA) Corp.,* 275 S.W.3d 444, 456 & n. 57 (Tex.2008) (quoting terms of former article 2.21 and discussing its legislative history).

■ Section 21.223 provides, in relevant part:

(a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to

. . . .

(2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation

---

**3.** Article 2.21 expired effective January 1, 2010. Article 2.21(a) has been codified in substantially the same form in Texas Business Organizations Code section 21.223. *See SSP Partners v. Gladstrong Invs. (USA) Corp.,* 275 S.W.3d 444, 456 & n. 57 (Tex.2008) (discussing former article 2.21 and stating, "Sections A and B of this article, after a legislative reorganization of the statutes governing business entities effective January 1, 2006, were recodified in substantially similar form in Tex. Bus. Orgs.Code § 2.223, and §§ 21.224–.225, respectively") (citing Act of May 29, 2003, 78th Leg., R.S., ch. 182, §§ 1–2, 2003 Tex. Gen. Laws 267, 427, 595).

or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or similar theory;

. . . .

(b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

TEX. BUS. ORGS.CODE ANN. § 21.223(a)(2), (b). "Actual fraud" as defined by article 2.21 "involves dishonesty of purpose or intent to deceive." *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 387 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding, in context of article 2.21, that owner of corporation that solicited corporate sponsorship for clients was not its owner's alter ego absent evidence that owner enjoyed direct personal benefits resulting from fraud).

■ "The corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations. . . ." *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex.1986); *see SSP Partners*, 275 S.W.3d at 451 n. 29. However, the corporate veil may be pierced on an alter ego theory "where a corporation is organized and operated as a mere tool or business conduit of another. . . ." *Castleberry*, 721 S.W.2d at 272. "Alter ego ap-

plies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* "It is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.*

■ Parties are not, however, jointly liable for a corporation's obligations "merely because they were part of a single business enterprise," i.e., "merely because of centralized control, mutual purposes, and shared finances." *SSP Partners*, 275 S.W.3d at 452, 455. Rather, "[d]isregarding the corporate structure involves two considerations": (1) "the relationship between [the] two entities" and (2) "whether the entities' use of limited liability was illegitimate." *Id.* at 455.

■ To pierce the corporate veil and impose liability under an alter ego theory of liability pursuant to *SSP Partners*, a plaintiff must show: (1) that the persons or entities on whom he seeks to impose liability are alter egos of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, in satisfaction of the requirements of article 2.21—now Business Organizations Code section 21.223(a) and (b).[4] *See id.* at 456 & n. 57.

4. In *Castleberry v. Branscum*, the supreme court had held that a showing of constructive fraud was enough to demonstrate an illegitimate use of the limited liability afforded to corporations under a single business enterprise theory of liability. 721 S.W.2d 270, 271 (Tex.1986); *see also SSP Partners*, 275 S.W.3d at 455. In *SSP Partners*, the court narrowed its prior holding, recognizing that *Castleberry*

had been superseded by article 2.21, which "takes a stricter approach to disregarding the corporate structure." 275 S.W.3d at 455. It held that "the single business enterprise liability theory is fundamentally inconsistent with the approach taken by the Legislature in article 2.21." *Id.* at 456. In sum, the court held that the mere fact that two corporations share "centralized control, mutual purposes,

We address both prongs of the test with respect to this case.

### A. Appellants as Alter Egos of Each Other

 To satisfy the first consideration in piercing the corporate veil—whether the persons or entities sought to be charged with liability are alter egos of the primary debtor—the relationship between corporate entities can be assessed using factors such as:

- whether the entities shared a common business name, common offices, common employees, or centralized accounting;
- whether one entity paid the wages of the other entity's employees;
- whether one entity's employees rendered services on behalf of the other entity;
- whether one entity made undocumented transfers of funds to the other entity; and
- whether the allocation of profits and losses between the entities is unclear.

*Id.* at 450–51.

Here, there is uncontroverted evidence, from Edison, Robinson, and the public records of which the trial court took judicial notice, that James and Sharon Dixon were owners and officers of Tryco. Rather than paying Tryco's corporate franchise tax, which was due and unpaid at the time the verdict was reached and the judgment entered in the FLSA suit, the Dixons forfeited Tryco's corporate charter. The same day they forfeited the corporate charter—after the verdict was returned, but before the judgment was entered on it—James and Sharon Dixon transferred Tryco's as-

sets to Crown Staffing, which they had previously incorporated. Crown Staffing had the same officers as Tryco, including James Dixon, its president; it took over the offices of Tryco at the same location; it used the same telephone numbers as Tryco; it shared common employees with Tryco; it performed the same temporary staffing services for essentially the same companies; and it was managed by the same managers.

Furthermore, the evidence showed that James and Sharon Dixon exercised absolute ownership and control over both corporations, maintained a very significant personal financial interest in both corporations, and used them for personal purposes. Specifically, they neglected the corporate formality of paying Tryco's franchise tax and transferred all of Tryco's assets to Crown Staffing for the purpose of avoiding payment of the judgment in the FLSA suit.

The foregoing un-refuted evidence establishes that Tryco and Crown Staffing were both alter egos of Sharon and James Dixon and part of a single business enterprise for purposes of piercing the corporate veil under former Business Corporations Act article 2.21 and under the current provision, Business Organizations Code section 21.223. We hold, therefore, that Robinson satisfied the first prong of the test for finding these appellants jointly and severally liable for the judgment in the FLSA suit.

### B. Use of the Corporate Fiction to Perpetrate a Fraud

 The foregoing factors "are almost entirely irrelevant" to the second

---

and shared finances" is not enough to pierce the corporate veil and hold the officers liable. *Id.* at 451, 455. Rather, a party must also show that the corporate form was used to

perpetrate a fraud under article 2.21, now Business Organizations Code section 21.223. *Id.* at 455–56.

consideration in determining personal liability under section 21.223—whether the use of limited liability was illegitimate. *Id.* at 455. That determination is made "based on a careful evaluation of the policies supporting the principle of limited liability." *Id.* Therefore, we must look to *SSP Partners* and *Castleberry* to see whether the corporate fiction was used as a means of "perpetrat[ing] an actual fraud on the obligee [Robinson] primarily for the direct personal benefit of the . . . owner[s]" of Tryco and Crown Staffing, the Dixons. TEX. BUS. ORGS.CODE ANN. § 21.223(b).

The supreme court observed in *SSP Partners* that courts "disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." 275 S.W.3d at 454. Specifically, courts disregard the corporate fiction

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* (quoting *Castleberry,* 721 S.W.2d at 271–72). "Because disregarding the corporate fiction is an equitable doctrine, Texas takes a flexible fact-specific approach focusing on equity" in determining whether the corporate veil should be pierced. *Castleberry,* 721 S.W.2d at 273; *see also Wilson v. Davis,* 305 S.W.3d 57, 69 (Tex. App.-Houston [1st Dist.] 2009, no pet.).

We conclude, on the basis of the evidence in this case, that five of the criteria for piercing the corporate form and finding appellants jointly and severally liable for the judgment against Tryco in the FLSA suit are satisfied: (1) the corporate fiction was used with respect to both Tryco and Crown Staffing as a means of defrauding Robinson by depriving Tryco of assets to pay the judgment awarded against it in the FLSA suit; (2) Crown Staffing was organized and operated as a mere tool or business conduit of Tryco's and James and Sharon Dixon's temporary staffing business; (3) the Dixons forfeited Tryco's charter, organized Crown Staffing, and transferred Tryco's assets to it as a means of evading Tryco's legal obligation to pay the judgment in the FLSA suit; (4) the corporate fiction was used to circumvent the consequences to James and Sharon Dixon of Tryco's violation of a federal statute, the FLSA, by transferring the assets of Tryco, which were subject to Robinson's judgment lien, to Crown Staffing, leaving Tryco without assets to pay the judgment in the FLSA suit; and (5) the corporate fiction was thereby relied upon by appellants to justify a wrong. Thus, the evidence supports an affirmative finding that the corporate fiction was used illegitimately by James and Sharon Dixon, Tryco, and Crown Staffing in violation of the second prong of the test for piercing the corporate veil and imposing liability under article 2.21 or Business Organizations Code section 21.223.

We hold that Robinson has produced evidence sufficient to establish that Crown Staffing was used as the mere tool or business conduit of Tryco and of James

and Sharon Dixon for the purpose of perpetrating a fraud by avoiding payment of the judgment entered against Tryco in the FLSA suit. Thus, Robinson has borne his burden of producing proof sufficient to justify piercing the corporate veil under article 2.21 or Business Organizations Code section 21.223 and holding Tryco, James and Sharon Dixon, and Crown Staffing personally liable to him as alter egos of each other for payment of the judgment.

We also hold, however, that Robinson has failed to show by more than a scintilla of evidence that Troy Dixon owned or controlled either Tryco or Crown Staffing or used the corporate fiction illegitimately; therefore, Robinson has not proved Troy Dixon's personal liability to him under section 21.223.

We overrule appellants' first issue as to James and Sharon Dixon, Tryco, and Crown Staffing, and we sustain it as to Troy Dixon.[5]

## Conclusion

We reverse the judgment of the trial court as to appellant Troy Keith Dixon and render judgment that Robinson take nothing by his claims against him. We affirm the judgment as to appellants Tryco Enterprises, Inc., Sharon C. Dixon, James Dixon, and Crown Staffing, Inc.

Justice KEYES, concurring.

Justice MASSENGALE, concurring in part and dissenting in part.

EVELYN V. KEYES, Justice, concurring.

Because the majority opinion's holding on appellants' first issue is dispositive of this appeal, it is unnecessary to address the Dixons' third issue concerning their personal liability for the judgment in the FLSA suit under Tax Code section 171.255. However, because the dissent specifically addresses this issue and partially accepts the Dixons' arguments, I take the unusual, but not unprecedented, step of authoring a separate concurring opinion to address the dissent's arguments on this issue. See, e.g., Mosqueda v. G & H Diversified Mfg., Inc., 223 S.W.3d 571, 584 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (Seymore, J., concurring) ("Like other jurists before me, I take 'the unusual, but not unprecedented, step of concurring to my own opinion in order to add some further observations.'") (quoting Thurman v. State, 861 S.W.2d 96, 101 (Tex.App.-Houston [1st Dist.] 1993, no pet.) (Cohen, J., concurring)); Alvarado v. Wingfoot Enters., 53 S.W.3d 720, 727 (Tex.App.-Houston [1st Dist.] 2001) (Taft, J., concurring), rev'd, 111 S.W.3d 134 (Tex. 2003). Were I to reach it, I would overrule the Dixons' third issue in its entirety.

In their third issue, James and Sharon Dixon argue that they are not personally liable under Tax Code section 171.255 for the judgment entered against Tryco in the FLSA suit. They argue, "Texas courts have consistently held that individual liability on the officers of corporations after the forfeiture of their corporate privileges does not apply to debts brought into exis-

---

**5.** In their third issue, appellants argue that Robinson's suit to enforce the judgment in the FLSA suit is predicated on the claim that James and Sharon Dixon perpetrated a fraud that violated Tax Code section 171.255 by forfeiting Tryco's charter before the judgment was entered. Appellants argue that the Dixons' actions were not illegal or wrongful un-

der section 171.255 and that, therefore, they cannot be personally liable to Robinson under either that section of the Tax Code or Business Organizations Code section 21.223. Because our holding with respect to appellants' first issue is dispositive, we find it unnecessary to reach appellants' third issue.

tence, caused by, resulting from, or arising out of actions occurring before forfeiture." They contend that, under the "relation-back" doctrine, Tryco's debt to Robinson must be counted as having "occurred" or been "created" when the actions on which Robinson's FLSA suit was based occurred—namely, each time Tryco wrongfully failed to pay Robinson overtime in violation of the FLSA. They argue that these actions were actions that occurred in the ordinary course of Tryco's business, long before the forfeiture of its corporate charter; that the "debt" on which damages were entered against Tryco was, therefore, a pre-existing debt of the corporation incurred before forfeiture; that the judgment in the FLSA suit entered after the forfeiture merely memorialized this pre-existing corporate debt; that, under Texas law construing section 171.255, the date of the debt for which Robinson was awarded damages "relates back" to each of the dates on which Tryco incurred expenses for Robinson's unpaid overtime; and that, therefore, they cannot be held personally liable for the judgment entered on those debts under Tax Code section 171.255, which applies only to debts of the corporation incurred after forfeiture of the corporate charter. The dissent accepts this argument and would hold the Dixons personally liable only for that part of the judgment that does not reflect Robinson's recovery for unpaid overtime, namely, the attorney's fees, court costs, expenses, interest, and statutory liquidated damages for "willful violation of the Fair Labor Standards Act." *See* Dissent at 533–34.

Robinson, on the other hand, argues that the Dixons misread section 171.255 and the case law applying it. He argues that the debt he seeks to collect is not a series of debts for unpaid wages incurred in the ordinary course of Tryco's business over a period of time, but a judgment debt, based on a jury verdict, awarding him statutory damages for ongoing violations of the FLSA by Tryco's corporate officers entered after forfeiture of Tryco's corporate charter and the transfer of its assets. Under section 171.255, the officers of a corporation may be held liable for their own wrongful acts that resulted in a debt of the corporation incurred after forfeiture of its corporate charter.

Robinson points out that Tryco forfeited its corporate charter by failing to pay franchise taxes on August 22, 2003, immediately after the verdict was reached in the FLSA suit on August 13, 2003, and shortly before the judgment was entered on September 11, 2003. Robinson contends that James and Sharon Dixon fraudulently forfeited Tryco's charter and transferred Tryco's assets to Crown Staffing to avoid paying the judgment in the FLSA suit. He argues that, under established law, the judgment debt in the FLSA suit falls squarely within the definition of a "debt" of a defunct corporation for which the corporation's officers and directors may be held personally liable under Tax Code section 171.255. I agree with Robinson.

Tax Code section 171.255 provides:

(a) If the corporate privileges of a corporation are forfeited for the failure to . . . pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

(b) The liability of a director or officer is in the same manner and to the

same extent as if the director or officer were a partner and the corporation were a partnership.

(c) A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:

(1) over the director's objection; or

(2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.

TEX. TAX CODE ANN. § 171.255 (Vernon 2008).

Thus, corporate officers and directors may not be held personally liable under section 171.255 for lawfully contracted debts of the corporation that occurred prior to forfeiture of the corporate charter or incurred after forfeiture without their knowledge and approval. But they may be held personally liable for "debt" created or incurred after forfeiture of the corporate charter.

A "debt" as used in section 171.255(a) "is defined as 'any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand.'" *Taylor v. First Cmty. Credit Union,* 316 S.W.3d 863, 867 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (quoting Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735 (defining "debt" as used in chapter 171, as formerly codified in Tax Code section 171.109(a)(3)), *repealed by* Act of May 2, 2006, 79th Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 23); *Cain v. State,* 882 S.W.2d 515, 516 n. 1 (Tex.App.-Austin 1994, no writ).

I agree with Robinson that the judgment entered against Tryco in the FLSA suit for statutorily mandated damages, attorney's fees, costs, and interest was a "legally enforceable obligation measured in a certain amount of money" payable by Tryco to Robinson within a specified time period or on demand. I further agree that a legally-enforceable obligation for a sum certain was incurred by Tryco only when the trial court entered judgment in the form of statutory damages on the jury verdict in the FLSA suit after Tryco had failed to pay franchise taxes and had forfeited its corporate charter. *See Taylor,* 316 S.W.3d at 867 (quoting former Tax Code section 171.109(a)(3)). Thus, the debt at issue here was not, as the Dixons argue, created by Tryco's failures to pay Robinson's overtime wages. There was no employment contract between Tryco and Robinson that provided for the payment of the sums of money the jury found were wrongfully withheld from Robinson under the FLSA. Rather, the jury found that Tryco's corporate officers intentionally withheld from Robinson statutorily mandated overtime wages. To avoid paying any judgment entered on the jury verdict, the Dixons immediately forfeited Tryco's corporate charter and transferred Tryco's assets to Crown Staffing. The trial court then entered judgment on the jury verdict against Tryco in the FLSA suit in the amount of "$58,349.000 for unpaid wages [and] $58,349.00 for willful violation of the Fair Labor Standards Act"—precisely in accordance with the FLSA, which permits recovery by employees whose employers have violated the Act "in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C.S. § 216(b) (LexisNexis 2010). The court also awarded Robinson attorney's fees, court costs, expenses, and interest, as permitted by the same statute. Thus, a legally enforceable obligation measurable in a sum certain was created when the trial court entered judg-

ment awarding Robinson statutory damages.

The dissent draws a distinction unique to section 171.255 jurisprudence between unpaid compensation awarded as liquidated damages under section 216 of the FLSA and the doubling of that amount, also awarded as liquidated damages under that same section of the FLSA, for the employer's willful violation of the FLSA. It construes the damages awarded by the jury for wrongfully withheld statutorily mandated compensation as a series of lawful debts of the corporation incurred in the ordinary course of Tryco's operations and merely renewed in the post-forfeiture judgment. It then construes the doubling of the damages award by the jury for the willfulness of the violations, in accordance with the terms of the statute, as a new debt incurred after forfeiture. I disagree with the dissent's reasoning and its conclusion.

"Liquidated damages" awarded for violations of the FLSA are not merely the memorialization of accumulated pre-existing debts. The FLSA is set out in Title 29 of the United States Code. Sections 206 and 207 of the Act regulate the payment of wages and overtime compensation by employers. Section 216(b) provides for damages for violations of the Act. It states, in relevant part: "Any employer who violates the provisions of [section 206] or [section 207] of this Act shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages. . . ." 29 U.S.C.A. § 216 (LexisNexis 2010). The trial court's duty to award liquidated damages in an amount equal to the unpaid compensation due under sections 206 and 207 of the FLSA is a ministerial duty under the terms of section 216. *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1414 (5th

Cir.1990). This duty is made discretionary, however, by section 260 of the Act, which provides:

> In any action . . . to recover . . . unpaid overtime compensation, or liquidated damages, under the [FLSA], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith *and* that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section [216].

29 U.S.C.S. § 260 (LexisNexis 2010) (emphasis added); *Mireles,* 899 F.2d at 1414–15. To be relieved of liability for liquidated damages under section 216, an employer found liable under section 206 or 207 of the FLSA has the "substantial burden" of proving to the satisfaction of the trial court both that its acts giving rise to the employees' suit were in good faith and that it had reasonable grounds for believing it was not violating the FLSA. *Mireles,* 899 F.2d at 1415.

The debt owed in this case for Tryco's FLSA violations was determined, liquidated, and made enforceable by the judgment entered by the trial court in accordance with the mandate of the FLSA. This required that the trial court determine the amount of overtime compensation due Robinson under the statute and that it double that amount to determine the liquidated damages due Robinson, *unless* Tryco's officers carried their "heavy burden" of showing to the satisfaction of the court that they acted in good faith and had reasonable grounds for believing that their acts in withholding overtime compensation from Robinson (and also for retaliatorily firing him) did not violate the FLSA. *See* 29 U.S.C.S. §§ 216, 260. Here, the trial

court found both that Robinson was entitled to wrongfully withheld unpaid overtime compensation and that Tryco was not entitled to the good faith defense; thus, it entered judgment for the full amount of statutory damages made mandatory by section 216 of the FLSA.

The Texas Supreme Court first defined a corporate debt for which corporate officers may be held personally liable after forfeiture of the corporate charter with respect to the predecessor of section 171.255 in the seminal case of *Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79 (1946). That statute, like the present statute, imposed personal liability on a director or officer of a corporation whose right to do business had been forfeited for "any and all debts of such corporation which may be created or incurred, *with his knowledge, approval and consent*" after the forfeiture and before the revival of the corporation's right to do business. *Id.* at 80 (construing predecessor of section 171.255, article 1821 of Revised Civil Statutes) (emphasis added).

In *Schwab*, the supreme court refused to hold the officers of a defunct corporation personally liable on a note evidencing obligations of the corporation when the note at issue merely renewed a debt after forfeiture of the corporate charter. *Id.* at 81–82. The court held that the word "created" means "[t]o bring into existence," while the word "incurred" means "brought on, occasioned, or caused." *Id.* at 81. Under these definitions, it held, "the liability imposed under the statute is only for debts contracted after the forfeiture of the right to do business, and has no application to the *renewal* of obligations arising prior thereto." *Id.* (emphasis added). Rather, "[t]he statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation." *Id.* (emphasis added).

Subsequently, the supreme court, further construing that same predecessor of section 171.255, held that the officers of a defunct corporation were personally liable for debts of the corporation incurred for purchases of merchandise to which the officers consented and which they approved after the corporation had forfeited its right to do business. *First Nat'l Bank of Boston v. Silberstein,* 398 S.W.2d 914, 915–16 (Tex.1966) (holding officers liable for debt "which results from and is attributable to the acts of Respondents").

Here, there was no "renewal" of Tryco's pre-existing debts to Robinson after the forfeiture of Tryco's corporate charter. Rather, there was a judgment for a sum certain for violations of the FLSA that resulted from and was attributable to the wrongful acts of the Dixons, as corporate officers of Tryco. This case thus falls squarely within the scope of section 171.255 as construed by the Texas Supreme Court in *Schwab* and *Silberstein.*

An examination of *Schwab* and *Silberstein* and of the case law following these two cases in construing section 171.255 and its predecessor statute makes it apparent that the Dixons and the dissent have conflated the two different types of corporate debt distinguished in these cases: (1) the lawful contractual debts of a corporation, which may be renewed or reduced to judgment after forfeiture of the corporation's charter without changing the underlying nature of the debt as a debt of the corporation incurred pre-forfeiture in the regular course of its business, and (2) both (a) new debts incurred by the corporation and approved after forfeiture by officers with knowledge of the forfeiture and (b) judgment debts or penalties incurred by a corporation for the wrongful acts of its officers or directors that occurred prior to

forfeiture of the corporate charter but were not reduced to "a legally enforceable obligation measured in a certain amount of money" in the form of a legal judgment or penalty until after forfeiture. *See Silberstein,* 398 S.W.2d at 916 (distinguishing debts of defunct corporation "incurred in the regular course of the business of the corporation," for which officers and directors cannot be held personally liable, and debts incurred after corporation "no longer has the right to do business," for which "the personal liability of officers and directors ... is limited to those debts of which they have knowledge and, with the opportunity afforded thereby, which they have consented to and approved"); *Schwab,* 198 S.W.2d at 81–82 (discussing nature of corporate debt); *see also Beesley v. Hydrocarbon Separation, Inc.,* 358 S.W.3d 415, 422–23 & n. 7 (Tex.App.-Dallas 2012, no pet.) (distinguishing between types of debts courts have examined in this context).

Corporate officers and directors may be held personally liable for liquidated damages awarded, or penalties assessed, in a post-forfeiture judgment as a result of their own wrongful acts that occurred either before or after forfeiture to the same extent a partner in a partnership may be held liable for his own acts. *See* TEX. TAX CODE ANN. § 171.255(b) ("The liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership"); *see also Silberstein,* 398 S.W.2d at 915 (quoting predecessor statute to section 171.255). Here, the Dixons' actions in violating the FLSA prior to forfeiture of Tryco's corporate charter and then in terminating Tryco's charter and transferring its assets to Crown Staffing to avoid paying the monetary judgment awarded to Robinson as a result of those statutory violations are all acts for which a partner would be liable under the Texas

Partnership Act. *See, e.g., Moore v. Sussdorf,* 421 S.W.2d 460, 465 (Tex.Civ.App.-Tyler 1967, writ ref'd n.r.e.) (recognizing liability of partner in joint venture to partnership for termination of partnership for fraudulent purpose). They are thus actions for which James and Sharon Dixon may be held personally liable under Tax Code section 171.255. *See* TEX. TAX CODE ANN. § 171.255(b).

The Dixons also argue, and the dissent agrees, that each wrongful failure of Tryco to pay Robinson's overtime wages "relate[s] back" to the date of the separate and specific statutory violation, all of which occurred before forfeiture. The Dixons contend that because the "individual liability of the officers of corporations after the forfeiture of their corporate privileges does not apply to debts brought into existence, caused by, resulting from, or arising out of actions occurring before forfeiture," they are not jointly and severally liable for the judgment against Tryco.

The Dixons contend that *Rogers v. Adler,* 696 S.W.2d 674 (Tex.App.-Dallas 1985, writ ref'd n.r.e.), and other section 171.255 cases support their argument. This case is, however, sharply different from those section 171.255 cases to which the Texas courts have held the "relation-back" doctrine applies. It belongs, instead, to the well-established line of cases in which Texas courts have held that the relation-back doctrine does *not* apply.

"Broadly speaking, the relation-back doctrine may be applied to give effect to the parties' *lawful intentions, preserve rights* that would otherwise be lost, or *afford a remedy* when none would otherwise exist." *Cain,* 882 S.W.2d at 518 (citing *Brandon v. Claxton,* 30 S.W.2d 679, 680–81 (Tex.Civ.App.-Dallas 1930), *aff'd,* 121 Tex. 184, 47 S.W.2d 263 (1932)) (emphasis added). Here, there were no lawful

intentions for the relation-back doctrine to preserve. And, if the Dixons and the dissent were correct, Robinson would *lose* the right to recover the damages he was awarded due to the Dixons' wrongful acts, since Tryco was denuded of its assets by them, and he would have *no* remedy for the FLSA violations committed by the Dixons. This case is thus totally unlike those cases cited by the Dixons, and by the dissent, to support their claims that Tryco's judgment debt was really just the renewal and memorialization of previously-incurred lawful obligations of the corporation, for which its corporate offers may not be held liable.

By contrast, in *Rogers v. Adler,* the Dallas Court of Appeals applied the "relation-back" doctrine and held that two officer-directors of a corporation were not personally liable for a judgment rendered against the corporation after forfeiture of its corporate charter for a debt of the corporation incurred on a purchase contract where all the operative facts occurred at least four years before the forfeiture and were "essentially claims based on contract despite the allegations of fraud and breach of fiduciary duty." 696 S.W.2d at 675–77. The pleadings and evidence in that case made it clear to the court that the plaintiffs' claims, which were reduced to judgment after forfeiture, were actually claims for the payment of contractual obligations of the corporation that were incurred in the regular course of business after the corporate charter was forfeited and were not a judgment based on the fraudulent actions or breach of fiduciary duty of the officers of the corporation, as required for personal liability under section 171.255. *Id.* at 677; *see also* TEX. TAX CODE ANN. § 171.255(b) (providing officers and directors liable to same extent as if they were partners and corporation was partnership); *Silberstein,* 398 S.W.2d at 916 ("[T]he reasonable construction of the statute to the facts at hand is that personal liability is determined by the acts of Respondents in consenting to and approving the debts of the corporation where knowledge of their creation is shown to have come to them in the regular course of the business of the corporation."); *Schwab,* 198 S.W.2d at 82 ("[T]he new agreement made on behalf of the corporation did not create or incur a new debt within the meaning of the statute. It merely created new evidence of the existing indebtedness."). The debt in *Rogers* was thus merely new evidence of an existing indebtedness.

The other cases upon which the Dixons and the dissent rely as authority for applying the relation-back doctrine to this case are all inapplicable for the same reason *Rogers* is inapplicable: all of the cases are cases in which the plaintiff sought to collect from corporate officers or directors after forfeiture of the corporate charter debts incurred in the regular course of the business of a corporation prior to forfeiture; all are cases in which the court's decision gave effect to the *lawful intentions* of the parties to a preexisting contract, preserved rights that would otherwise be lost, or afforded a remedy to a creditor of the corporation when none would otherwise exist. *See Cain,* 882 S.W.2d at 518 (emphasis added). None are true fraud cases or breach of fiduciary duty cases arising from the wrongful acts of corporate officers or directors for which partners might be held personally liable if the corporation were a partnership. *See McKinney v. Anderson,* 734 S.W.2d 173, 175 (Tex.App.-Houston [1st Dist.] 1987, no writ) (holding that payments due under lease agreement were created or incurred at time of execution of agreement, not time when payments came due, and were not recoverable from corporate officers); *Curry Auto Leasing, Inc. v. Byrd,* 683 S.W.2d

109, 112 (Tex.App.-Dallas 1984, no writ) (applying relation-back doctrine to contract claims arising out of breach of car-rental agreement and holding that, for purposes of section 171.255, contractual debt was created or incurred on date of execution of rental contract, not date on which debt was reduced to judgment, which occurred after forfeiture). Both *McKinney* and *Curry Auto Leasing*, like *Rogers*, were cases for the collection of a debt due on a contract that the corporation entered into long before it forfeited its corporate charter, and in neither case was an allegation of fraud or breach of fiduciary duty sustained against the corporation's officers.

Similarly, in *Williams v. Adams*, 74 S.W.3d 437 (Tex.App.-Corpus Christi 2002, pet. denied), a judgment creditor attempted to collect from two officers of a corporation a judgment in negligence for personal injuries the plaintiff had suffered on condominium premises owned by the corporation, rendered against the corporation five months after forfeiture of its charter for failure to pay franchise taxes. *Id.* at 438–39. Although, in *Williams*, the debt—a judgment for negligence of the corporation—was incurred after forfeiture of the corporate charter and was not a debt owed pursuant to a lawful pre-existing contractual obligation of the corporation, it also was not incurred as a result of any wrongful act of the corporation's officers or directors or incurred with their knowledge and approval. *Id.* at 441; *see also Silberstein*, 398 S.W.2d at 915–16; *Schwab*, 198 S.W.2d at 81–82.

In holding the officers not liable for the judgment in *Williams*, the Corpus Christi Court of Appeals applied section 171.255(c)'s exception to the liability of an officer or director of a corporation, which applies to preclude personal liability for a debt of the corporation incurred without the director's or officer's knowledge if the exercise of reasonable diligence would not have revealed the intention to incur the debt. *Williams*, 74 S.W.3d at 441–42; *see* TEX. TAX CODE ANN. § 171.255(c). The court held that section 171.255 could not be used to impute personal liability to an officer or director of a corporation for a corporate debt when the debt is a tort judgment based on the negligence of the corporation. *Williams*, 74 S.W.3d at 442. As was the case with the contract claims at issue in *Rogers*, *McKinney*, and *Curry Auto Leasing*, negligence, unlike breach of fiduciary duty or fraud, is not an intentional tort for which a partner might be held liable for the acts of a partnership, as required for liability under section 171.255. *See* TEX. TAX CODE ANN. § 171.255(b); TEX. BUS. ORGS.CODE ANN. §§ 152.204 (Vernon 2011) (stating partner's duties to partnership and other partners), 152.210 (Vernon 2011) (stating remedies of partnership and partners); *see also* TEX. TAX CODE ANN. § 171.255(c) ("A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred ... without the director's knowledge and that the exercise of reasonable diligence ... would not have revealed the intention to create the debt").

This case, by contrast, like *Cain*, falls squarely within the scope of acts for which a corporate officer or director of a defunct corporation may be held personally liable under *Schwab*, *Silberstein*, and their progeny, and to which the relation-back doctrine does not apply, namely, those cases in which a penalty or judgment is incurred by a corporation after forfeiture of its corporate charter as a result of the wrongful acts of the corporation's officers or directors before or after forfeiture.

Cain was an officer and director of an oil-well-operator corporation. 882 S.W.2d at 516. After ordering the corporation to

plug a number of oil wells, which it failed to do, the Texas Railroad Commission authorized the expenditure of State funds to plug the wells. *Id.* Six months later, the corporation forfeited its corporate charter for failure to file its franchise-tax report. *Id.* Subsequently, the Commission paid nearly $50,000 to plug the wells, and it then sought to collect from Cain personally the amounts it had spent. *Id.* The Austin Court of Appeals determined that the debt was not liquidated until after forfeiture, when the Commission filed suit to recover the amount of funds spent to plug the wells after the corporation failed to do so, and it refused to hold that the debt related back to the Commission's authorization of the use of State funds to plug the wells. *Id.* at 519–20. The court stated that the corporation was under a statutory duty to plug the wells and that Cain, as a corporate official, was responsible for ensuring that the corporation performed that duty. *Id.* at 520. Quoting *Schwab,* the court reiterated the purpose of section 171.255, stating, "The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation." *Id.* (quoting *Schwab,* 198 S.W.2d at 81). It affirmed the trial court's judgment holding that Cain was liable to the Commission for the debt. *Id.*

The Austin Court of Appeals also followed this principle in *Jonnet v. State,* 877 S.W.2d 520 (Tex.App.-Austin 1994, writ denied). The court held that, for purposes of section 171.255(a), the corporation's debt for failure to pay an administrative penalty assessed by the Texas Railroad Commission was "created or incurred" on the date the Commission entered an order directing the corporation to pay the administrative penalty, and not on the date, nearly four years earlier, when the corporation began violating an administrative rule requiring that oil wells be plugged. *Id.* at 523–24.

The court held the officers and directors liable for the penalty in their individual capacities under section 171.255(a). *Id.* at 524. The court explicitly rejected the relation-back doctrine on the ground that the penalties assessed by the Commission were based not just on the corporation's initial violation of a Commission rule on a given date, but on its *"ongoing* violation of [the rule], which continued day after day for nearly four years," so that, unlike cases to which the relation-back doctrine applies, "in which the debt can be said to relate back to a single date—the date of the written instrument [creating the debt]— the conduct underlying the Commission's order is of a continuous nature, with no *single* date to which the penalty can relate back." *Id.* (emphasis in original).

Exactly the same reasoning applies here. Tryco's acts of violating the FLSA through the willful failure of the Dixons, its corporate officers, to pay Robinson overtime compensation to which he was statutorily entitled constitute an ongoing series of wrongful acts of violation of the FLSA prior to forfeiture of the corporate charter, as did the *Jonnet* defendants' ongoing violations of the Railroad Commission rule. And the statutory damages due Robinson for the willful acts of Tryco's corporate officers were reduced to a liquid and enforceable debt only in the judgment against Tryco entered in the FLSA suit after forfeiture of Tryco's corporate charter and the transfer of its assets. Thus, the Dixons, as officers of Tryco, may be held personally liable for the damages awarded to Robinson in that judgment, just as the defendant-officers in *Jonnet* and *Cain* were held personally liable for the penalty assessed against the corporation and the cost of funds expended by the State to plug abandoned oil wells, respectively.

Similarly, in *Skrepnek v. Shearson Lehman Bros., Inc.*, the Fourteenth Court of Appeals rejected the application of the relation-back doctrine and held Skrepnek, a broker and officer of Panterra Resources, Inc. ("PRI"), individually liable in fraud under section 171.255 for a judgment rendered against PRI after the forfeiture of PRI's corporate charter on a debt owed to Shearson for stocks purchased by Shearson for PRI after forfeiture. 889 S.W.2d 578, 580–82 (Tex.App.-Houston [14th Dist.] 1994, no writ). PRI represented that it would pay brokerage fees and margin interest that was not paid, resulting in a loss to Shearson. *See id.* at 580. The court affirmed the judgment, finding that Skrepnek was a participant in a fraud. *Id.* at 580–81.

This case is also similar to *Taylor. Taylor* was an action brought against an automobile-dealership corporation and its officer-director by a lender to the corporation for the balance due on defaulted retail automobile installment contracts. *See* 316 S.W.3d at 865. The lender alleged, and the trial court found, that the dealership breached its contractual obligations to the lender by failing to provide good title to the motor vehicles the dealership sold to its customers under the contracts assigned to the lender and by committing other similar acts. *Id.* The dealer's actions breached its obligations to both the vehicle-purchaser and the lender and provided the vehicle-purchaser with a defense against the lender as the holder of the retail installment agreement. *Id.* The corporation's privileges were revoked for failure to file a required franchise tax report. *Id.* The lender sued, and the corporation's officer-director sought application of the relation-back doctrine to protect himself from liability for the judgment entered against him in favor of the lender. *Id.* at 866, 867.

The Fourteenth Court of Appeals rejected the application of the relation-back doctrine in *Taylor,* stating that it conflicted with the Legislature's 1987 definition of a debt as any legally enforceable obligation measured in a certain amount of money. *Id.* at 869. Reasoning that this definition constituted an intervening and material change in the statutory law, the court overruled its own precedent applying the relation-back doctrine in *River Oaks Shopping Center v. Pagan,* 712 S.W.2d 190 (Tex.App.-Houston [14th Dist] 1986, writ ref'd n.r.e.). *Id.* The court held that the officer-director of the dealership was personally liable for each debt of the corporation that was created or incurred after the date on which the corporate franchise tax report was due, including debt based on the dealership's breach of the dealership agreement. *Id.* at 867–70.

Finally, in *Beesley,* the Dallas Court of Appeals held that the promoter and officer of a corporation that had forfeited its corporate charter could not be held personally liable for the corporation's breach of a consulting agreement entered into by the corporation and its former owner before forfeiture. 358 S.W.3d at 423. The court explicitly drew a distinction between the debts incurred in *Cain* (penalty for "costs of plugging oil wells" that corporate officers were obligated by law to plug) and *Taylor* (damages for "breaches of warranty and failure to provide good title to automobiles")—which could not be "measured in a certain amount of money" at the time of contracting—and the debts incurred in *Rogers* (losses due to breach of purchase contract entered into long before forfeiture), *Curry Auto Leasing* (corporate debts arising from failure to adhere to leasing contract), and the case at hand in *Beesley* itself (breach of employment agreement)—each of which "specified both the amount and the date due, so that at the time of contracting, a 'debt' was 'creat-

ed' for purposes of section 171.255." *Id.* at 422–23 & n. 7.

The distinction drawn in *Beesley* between types of debt to which the relation-back doctrine does and does not apply also applies here and places the judgment against Tryco squarely in the category of debts to which the relation-back doctrine does not apply. The amount of damages due to Robinson for Tryco's violation of the FLSA was not, and could not be, specified at the time Robinson entered his employment contract with Tryco. Indeed, the amount of the enforceable debt was not, and could not be, determined until Robinson's case was tried and the trial court had determined that the FSLA had been violated, that the violations resulted in a sum certain payable to Robinson in form of unpaid overtime compensation, and that the violation was willful, so that Tryco was not entitled to the good faith defense but must pay, as statutorily mandated damages, double the amount of compensation wrongfully withheld. *See* 29 U.S.C.A. §§ 207, 216,260; *Mireles,* 899 F.2d at 1414–15.

Like the defendants in *Taylor, Cain,* and *Skrepnek,* James and Sharon Dixon, as corporate officers of Tryco, committed acts for which they could be held liable if they were partners in a partnership. *See* TEX. TAX CODE ANN. § 171.255(b); TEX. BUS. ORGS.CODE ANN. §§ 152.204, 152.210. They had both a fiduciary duty to perform their functions as corporate officers in good faith and to act in the best interest of the corporation, and they had a statutory duty to ensure that Tryco paid Robinson in accordance with federal FLSA requirements. They breached those common-law and statutory duties in an ongoing manner, and they retaliatorily fired Robinson for taking the logs on which his unpaid overtime was recorded. *See Jonnet,* 877 S.W.2d at 524 (citing ongoing nature of statutory violations in concluding relation-back doctrine did not apply). Robinson sued Tryco for statutory damages under the FLSA. When the jury delivered a verdict for damages in favor of Robinson against Tryco for its statutory violations, Sharon and James Dixon immediately forfeited Tryco's corporate charter for failure to pay the franchise tax then due and fraudulently transferred the corporate assets of Tryco to Crown Staffing, leaving Tryco an empty shell unable to pay the judgment that was entered against it two and one-half weeks later that reduced Robinson's damages to a sum certain.

I, therefore, specifically disagree with the dissent's construction of the requirements of section 171.255 for the imposition of personal liability on corporate officers for the debt of a defunct corporation, which goes even beyond the arguments made by appellants. The instant suit to enforce the judgment in the FLSA suit is not, as the dissent would have it, a suit to recover "unpaid overtime compensation" that became a legally enforceable obligation "on each respective payday or, with respect to the overtime that Robinson worked during the last work period, on a date shortly after his termination"—an amount that was clearly not a determined sum certain prior to the FSLA lawsuit. Dissent at 533. It is a suit to enforce against the officers of a defunct corporation a judgment for liquidated damages available only under a federal statute for the wrongful acts of those officers—a judgment entered immediately after the corporate charter was forfeited and the corporation denuded of its assets by those same corporate officers in the wake of the adverse jury verdict on which the judgment was rendered.

I would hold that the foregoing actions satisfy the requirements for imposing personal liability on James and Sharon Dixon

for the judgment entered against Tryco in the FLSA suit pursuant to Tax Code section 171.255 under well-established law. *See* TEX. TAX CODE ANN. §§ 171.255(a)-(b).

I would overrule the Dixons' third issue, and I would affirm the trial court's judgment holding James and Sharon Dixon personally liable under Tax Code section 171.255 for all damages awarded to Robinson in the judgment entered against Tryco in the FLSA suit.

MICHAEL MASSENGALE, Justice, dissenting.

I respectfully dissent in part from the majority's judgment. The evidence presented in this case does not justify piercing the corporate veil, and therefore the Dixons and Crown Staffing should not be held liable on that basis for the judgment against Tryco. Thus, I would reverse the judgment with respect to Troy Dixon and Crown Staffing.

The judgment with respect to James and Sharon Dixon is partially supported on a different ground—the fact that they are responsible under the Texas Tax Code for those Tryco liabilities incurred after the corporation failed to file a franchise report or pay a franchise tax or penalty that was due. These liabilities include Robinson's claims against Tryco for liquidated damages, attorney's fees, expenses, and court costs. I would therefore partially affirm the judgment with respect to James and Sharon Dixon, but only for those elements of damages owed by Tryco to Robinson.

**I. Piercing the corporate veil**

In their first issue, the appellants assert that the single-business-enterprise theory is no longer a viable theory of recovery in Texas. They also contend that the evidence was legally and factually insufficient to support liability under an alter-ego theory. In *Castleberry v. Branscum,* 721

S.W.2d 270 (Tex.1986), the Supreme Court of Texas "comprehensively reviewed the bases for imposing liability despite the corporate structure." *SSP Partners v. Gladstrong Invs. (USA) Corp.,* 275 S.W.3d 444, 454 (Tex.2009). The six grounds for disregarding the corporate fiction identified in *Castleberry* were:

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Castleberry,* 721 S.W.2d at 272 (footnotes omitted).

The majority treats *Castleberry*'s theories to support disregarding the corporate fiction as "criteria," and it concludes that five of the "criteria" favor holding James and Sharon Dixon and Crown Staffing jointly and severally liable for the judgment. Majority op. at 510. That approach is inconsistent with *Castleberry,* which specifically noted that the use of the corporate fiction as a sham to perpetrate a fraud is a separate grounds for imposing liability, apart from the allegation that a corporation has been used as a "mere tool or business conduit" of another entity, also known as the "alter ego" theory. *Castleberry,* 721 S.W.2d at 272 ("The basis used here to disregard the corporate fiction, a sham to perpetrate a fraud, is separate from alter ego."). The Court disapproved

of authorities that have "blurred the distinction" among the various grounds for disregarding the corporate fiction and have "treated alter ego as a synonym for the entire doctrine of disregarding the corporate fiction." *Id.* When the *Castleberry* Court considered the evidence to support the judgment disregarding the corporate fiction, it considered only one specific theory—sham to perpetrate a fraud—since it was the plaintiff's "strongest" basis to establish liability. *Id.* at 274. This approach shows that the six theories enumerated in *Castleberry* are not criteria or factors to be considered and applied in a unified analysis, as the majority has done, rather they are separate theories that must be independently analyzed.

This court and other courts of appeals have understood the six *Castleberry* bases as separate, independent theories for disregarding the corporate fiction.[1] Because each *Castleberry* basis for disregarding the corporate fiction is an independent ground for recovery, each one must be specifically pleaded or it is waived.[2] In this case, Robinson's live pleading, the second amended petition, stated theories of recovery based upon fraudulent transfer, alter ego, single business enterprise, and Section 171.255 of the Tax Code. During closing arguments following the presentation of evidence, the trial court asked Robinson's counsel, "You didn't put on a case for fraudulent transfer, did you?" He responded, "No, Judge. We were looking at alter ego and single [business enterprise] theor[ies]." Thus, Robinson pleaded only two equity-based theories to the trial court to justify holding the Dixons and Crown Staffing liable for Tryco's debts: single-business-enterprise theory and alter-ego theory.

### A. Single-business-enterprise theory

The majority acknowledges that the single-business-enterprise theory is not a viable theory under Texas law to impose one corporation's obligations on another. *SSP Partners,* 275 S.W.3d at 456. Accordingly, this theory is not a basis upon which this court may affirm the judgment ordering that the Dixons and Crown Staffing are jointly and severally liable for Tryco's debts owed to Robinson.[3] *See Big Easy*

---

1. *See, e.g., Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.,* 740 S.W.2d 838, 843 (Tex. App.-Houston [1st Dist.] 1987, no writ) ("The doctrine of 'alter ego' is a separate and distinct theory and is not to be confused with other reasons for disregarding the corporate fiction."); *Schlueter v. Carey,* 112 S.W.3d 164, 168 (Tex.App.-Fort Worth 2003, pet. denied) ("Alter ego and sham to perpetrate a fraud are separate bases for disregarding the corporate fiction, and each must be pleaded separately."); *Stewart & Stevenson Servs., Inc. v. Serv–Tech, Inc.,* 879 S.W.2d 89, 110 (Tex. App.-Houston [14th Dist.] 1994, writ denied) ("[T]he trial judge included within the alter ego theory another theory for disregarding the corporate veil—fraud. This was condemned in *Castleberry.*"); *Francis v. Beaudry,* 733 S.W.2d 331, 335 (Tex.App.-Dallas 1987, writ refd n.r.e.) ("In *Castleberry,* the Texas Supreme Court made it quite clear that the theory based upon 'a sham to perpetrate a fraud,' which also provides a means of disre-

garding the corporate fiction, is entirely separate from the alter ego theory.").

2. *Castleberry v. Branscum,* 721 S.W.2d 270, 275 n. 5 (Tex.1986); *Villanueva v. Astroworld, Inc.,* 866 S.W.2d 690, 695 (Tex.App.-Houston [1st Dist.] 1993, writ denied); *W & F Transp., Inc. v. Wilhelm,* 208 S.W.3d 32, 47 n. 16 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *Schott Glas v. Adame,* 178 S.W.3d at 307, 314 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *Schlueter,* 112 S.W.3d at 168.

3. The majority concludes that the "un-refuted evidence establishes that Tryco and Crown Staffing were both alter egos of Sharon and James Dixon and part of a single business enterprise for the purposes of piercing the corporate veil under former Business Corporations Act article 2.21 and under the current provision, Business Organizations Code section 21.223." Majority op. at 509. Insofar as the majority suggests that the single-business-

*Cajun Corp. v. Dallas Galleria Ltd.*, 293 S.W.3d 345, 347 (Tex.App.-Dallas 2009, pet. denied) (observing that *SSP Partners* "invalidated" the single-business-enterprise theory, and reversing judgment secured upon that theory). Therefore, the only remaining theory upon which the trial court could have based its judgment holding the Dixons and Crown Staffing liable was the alter-ego theory. *See SSP Partners*, 275 S.W.3d at 454 (noting that *Castleberry*'s reference to liability "where a corporation is organized and operated as a mere tool or business conduit of another corporation" corresponds to the alter-ego theory).

## B. Alter-ego theory

The evidence presented to the trial court was legally insufficient to support the judgment disregarding the corporate fiction based upon alter-ego theory. Texas law presumes that separate corporations are distinct entities. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex.2002). Because the corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations, *SSP Partners*, 275 S.W.3d at 451 n. 29, the same presumption of legal separateness applies to a corporation in relation to its officers and shareholders. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997); *Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 250 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The burden of proof to overcome the presumption rests on the party seeking to disregard the corporate separateness. *Torregrossa v. Szelc*, 603 S.W.2d 803, 804 (Tex.1980); *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 82 (Tex. App.-Houston [1st Dist.] 2008, no pet.).

An entity or person does not become jointly liable for a corporation's obligations "merely because they were part of a single business enterprise" or "merely because of centralized control, mutual purposes, and shared finances." *SSP Partners*, 275 S.W.3d at 452, 455. Invoking the doctrine involves two considerations: (1) "the relationship between [the] two entities" and (2) "whether the entities' use of limited liability was illegitimate." *Id.* at 455. The factors relevant to the first consideration "are almost entirely irrelevant" to the determination of the second consideration, which "must be based on a careful evaluation of the policies supporting the principle of limited liability." *Id.*

### 1. Relationship between the entities

Regarding the first consideration identified in *SSP Partners*, alter-ego theory requires a particular relationship between two entities or an entity and an individual in order to disregard the corporate form: the corporation is organized and operated as a "mere tool or business conduit" of another corporation or individual. *Castleberry*, 721 S.W.2d at 272. Stated differently, "[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* (citing *First Nat'l Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100, 103 (1939)). The *Castleberry* Court stated that a determination of whether this level of unity exists "is shown from the total dealings" of the corporation, and it listed several relevant indicators:

- the degree to which corporate formalities have been followed and cor-

enterprise theory retains any application in a

veil-piercing analysis, I respectfully disagree.

porate and individual property have been kept separately;

- the amount of financial interest, ownership, and control is maintained over the corporation; and
- the use of the corporation for personal purposes.

*Id.*

### a. Tryco's relationship to the Dixons

In determining whether unity exists between a corporation and an individual, we look to the following nonexclusive factors:

- payment of alleged corporate debts with personal checks or other commingling of funds;
- representations that the individual will financially back the corporation;
- diversion of company profits for the individual's personal use;
- inadequate capitalization; and
- other failures to keep corporate and personal assets separate.

*Am. Heritage, Inc. v. Nev. Gold & Casino, Inc.,* 259 S.W.3d 816, 830 (Tex.App.-Houston [1st Dist.] 2008, no pet.). The majority concludes that "the evidence showed that James and Sharon Dixon exercised absolute ownership and control over both corporations, maintained a very significant personal financial interest in both corporations, and used them for personal purposes." Majority op. at 509. However, the majority identifies no evidence that Sharon and James Dixon used Tryco for "personal purposes," and the record contains none. There was no evidence that the Dixons commingled their personal property with Tryco's property, that Tryco paid the Dixons' personal debts, that the Dixons paid Tryco's debts, that the Dixons

represented that they would financially back Tryco, or that the Dixons used Tryco or its assets for personal purposes. *See Am. Heritage,* 259 S.W.3d at 830. There was evidence that James and Sharon Dixon owned Tryco and managed the company. However, proving that an individual is a majority or sole shareholder and serves in a managerial capacity is insufficient to support an alter-ego finding. *See Grain Dealers,* 943 S.W.2d at 458; *Am. Heritage,* 259 S.W.3d at 830; *Penhollow Custom Homes, LLC v. Kim,* 320 S.W.3d 366, 373–74 (Tex.App.-El Paso 2010, no pet.); *Nichols v. Tseng Hsiang Lin,* 282 S.W.3d 743, 747 (Tex.App.-Dallas 2009, no pet.); *Morris v. Powell,* 150 S.W.3d 212, 220 (Tex. App.-San Antonio 2004, no pet.); *Goldstein v. Mortenson,* 113 S.W.3d 769, 781–82 (Tex.App.-Austin 2003, no pet.).

The majority relies on evidence that James and Sharon Dixon "neglected the corporate formality of paying Tryco's corporate franchise tax." Majority op. at 509. It is questionable whether the failure to observe "corporate formalities" is a factor that supports an alter-ego finding. It was mentioned as a factor in *Castleberry, see* 721 S.W.2d at 272, but the Legislature subsequently enacted a statute to protect individuals from liability for "any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality." Tex. Bus. Orgs. Code Ann. § 21.223(a)(3) (West 2011). Several courts of appeals, including this one, have relied on this provision's predecessor, which contained substantially identical language, to conclude that the observance of corporate formalities is no longer a relevant factor in the alter-ego analysis.[4]

---

4. *See Howell v. Hilton Hotels Corp.,* 84 S.W.3d 708, 714 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (op. on rehearing); *Sparks v. Booth,* 232 S.W.3d 853, 868–69 (Tex.App.-Dallas 2007, no pet.); *Morris v. Powell,* 150

S.W.3d 212, 220 (Tex.App.-San Antonio 2004, no pet.); *Schlueter,* 112 S.W.3d at 170; *Dominguez v. Payne,* 112 S.W.3d 866, 869 n. 2 (Tex.App.-Corpus Christi 2003, no pet.); *Pinebrook Props., Ltd. v. Brookhaven Lake Prop.*

In holding that the evidence established that Sharon and James Dixon were alter egos of Tryco, the majority also observed that they "transferred all of Tryco's assets to Crown Staffing for the purpose of avoiding payment of the judgment in the FLSA suit." Majority op. at 509. Robinson abandoned his fraudulent-transfer claim at trial. Even if the majority's factual observation is true, this does not demonstrate the type of relationship between the Dixons and Tryco necessary to establish alter ego, which is defined as a degree of unity so high that the separateness between the individual and the corporation has ceased. *See Castleberry*, 721 S.W.2d at 272. The situation perceived by the majority is more consonant with a typical "sham to perpetrate a fraud" theory, which the *Castleberry* Court described as applying when:

> a closely held corporation owes unwanted obligations; it siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the on-going business and its ability to pay off its debts; a new business then starts up that is basically a continuation of the old business with many of the same shareholders, officers, and directors.

*Id.* at 275. However, Robinson did not plead the "sham to perpetrate a fraud" theory. The fact that the Dixons may have transferred Tryco's assets to Crown Staffing in order to avoid a judgment does not prove alter ego, the theory that Robinson did plead. *See id.* at 272 ("[A] sham to perpetrate a fraud, is separate from alter ego.").

#### b. Tryco's relationship to Crown Staffing

With respect to Crown Staffing, the correct approach is to follow *Castleberry*'s example and consider several nonexclusive factors to determine whether the two corporations were not maintained as separate entities, including:

- common employees;
- common offices;
- centralized accounting;
- payment of wages by one corporation to another corporation's employees;
- common business name;
- services rendered by the employees of one corporation on behalf of another corporation;
- undocumented transfers of funds between corporations; and
- unclear allocation of profits and losses between corporations.

*SSP Partners*, 275 S.W.3d at 450–51, 455 (referencing and approving factors listed in *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.)).

The majority considers the following evidence as establishing that Crown Staffing was an alter ego of Tryco: "Crown Staffing had the same officers as Tryco, including James Dixon, its president; it took over the offices of Tryco at the same location; it used the same telephone numbers as Tryco; it shared common employees with Tryco; it performed the same temporary staffing services for essentially the same companies; and it was managed by the same managers." Majority op. at 509. Assuming that all of the evidence that

*Owners Ass'n*, 77 S.W.3d 487, 499 (Tex.App.-Texarkana 2002, pet. denied); *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 119 n. 5 (Tex.App.-Beaumont 2001, pet. denied); *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 233 (Tex.1990) (Hecht, J., dissenting) (noting that "a corporation's failure to ob-

serve corporate formalities is not alone enough to imply alter ego, especially when the corporation is closely held" because "observance of corporate formalities is now by statute not even a factor to be considered in determining alter ego").

Robinson presented was admissible, such evidence did tend to show these facts.

However, the majority overlooks the absence of any evidence that Tryco and Crown Staffing ever existed and operated simultaneously. In fact, the available evidence tends to show the opposite. At the time of Edison's testimony regarding his previous employment at Tryco, he worked for Crown Staffing. He did not testify that he was ever employed at both companies simultaneously. Robinson testified that when he called Tryco's telephone number, he spoke to someone who identified himself as working for Crown Staffing. He did not testify that the employee indicated that he was a common employee of both companies. Robinson further testified that when he visited Tryco's business location, he saw that the name had changed. He did not indicate that Tryco also advertised a presence at that location. In the absence of a showing that two corporations are going concerns at the same time, the evidence does not show that "a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry*, 721 S.W.2d at 272. When appellate courts have found sufficient evidence to support an alter-ego finding as between two corporations, the evidence demonstrated that the two corporations operated simultaneously. *See, e.g., Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 843–44 (Tex. App.-Houston [1st Dist.] 1987, no writ);

*Harwood Tire–Arlington, Inc. v. Young*, 963 S.W.2d 881, 885–86 (Tex.App.-Fort Worth 1998, pet. dism'd by agr.). It is impossible that Crown Staffing served as the alter ego of Tryco, or vice versa, if they did not exist and operate at the same time.

\* \* \*

The majority has impermissibly "blurred the distinction" among the various theories of liability identified in *Castleberry* by treating each basis "as a synonym for the entire doctrine of disregarding the corporate fiction." *See Castleberry*, 721 S.W.2d at 272. The only valid *Castleberry* basis that Robinson pleaded was alter-ego theory. I would hold that the evidence was legally insufficient to demonstrate the type of relationship between Tryco, James and Sharon Dixon, and Crown Staffing that alter-ego theory requires. Thus, the evidence does not support a finding that a relationship sufficient to disregard Tryco's corporate structure existed. *See SSP Partners*, 275 S.W.3d at 455.

### 2. Illegitimate use of limited liability

Furthermore, the majority has not identified legally sufficient evidence to support the second consideration in disregarding the corporate structure: "whether the entities' use of limited liability was illegitimate." *Id.* The majority recognizes that actual fraud must be proved in order to disregard the corporate fiction.[5] Majority

---

5. After *Castleberry*, legislation was enacted to provide that a showing of constructive fraud does not suffice to disregard the corporate structure. This was accomplished by enacting former Article 2.21 of the Texas Business Corporation Act, which has since been recodified as Section 21.223 of the Texas Business Organizations Code. *See* Act of May 12, 1989, 71st Leg., R.S., ch. 216, § 1, 1989 Tex. Gen. Laws 974, 974–75 (amended 1993, 1997, 2003, 2007) (former Business Corporations Act Article 2.21); Act of May 29, 2003, 78th Leg., R.S., ch. 182, § 1, 2003 Tex. Gen. Laws 267, 427 (current version at Tex. Bus. Orgs. Code Ann. § 2.223); SSP *Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 & n. 57 (Tex.2009) (discussing recodification). Under that statute, the corporate fiction may be disregarded if the plaintiff shows that a corporation was "used for the purpose of perpetrating and did perpetrate an actual fraud" on the plaintiff, and such actual fraud was "primarily for the direct personal benefit" of the corporation's owner or affiliate.

op. at 510. The majority suggests that the actual fraud in this case was "the fraud of incorporating Crown Staffing, forfeiting Tryco's corporate charter, and transferring Tryco's assets to Crown Staffing to avoid execution of Robinson's judgment against Tryco." Majority op. at 507. However, even assuming that these facts were proved, *Castleberry* demonstrates that these circumstances do not constitute actual fraud to justify piercing the corporate veil under an alter-ego theory.

In *Castleberry*, a corporation called Texan Transfer was formed by Castleberry, Branscum, and Byboth for the purpose of operating a furniture moving business. *Castleberry*, 721 S.W.2d at 274. Each individual owned one third of Texan Transfer's shares. *Id.* Soon thereafter, Branscum formed a competing business called Elite Moving. *Id.* Castleberry and Branscum had a falling out over the creation of Elite Moving, and Castleberry sold his stock back to Texan Transfer in exchange for a promissory note. *Id.* After making one payment on the note, Texan Transfer defaulted on the remaining balance. *Id.*

On at least three occasions, Branscum told others that he would deplete Texan Transfer of its assets to ensure that Castleberry was not paid on the promissory note. *Id.* at 274-75. After the buy-out, Elite Moving took more and more of Texan Transfer's business. *Id.* at 274. The two companies operated out of the same location, and Texan Transfer allowed Elite Moving to use its trucks despite the lack of a written rental agreement or other records to show how much Elite Moving owed for such usage. *Id.* After Castleberry filed suit, Branscum and Byboth formed a third corporation which also operated out of the same location, they terminated a major

contract that Texan Transfer had with a furniture company, and then they obtained for the third corporation the same contract. *Id.* at 274-75. The jury found that Branscum and his co-owner had used Texan Transfer as a sham to perpetrate a fraud on Castleberry, and the trial court rendered judgment that Branscum and Byboth were personally liable for the promissory note. *Id.* at 271.

The Supreme Court of Texas held that constructive fraud, not just actual fraud, was adequate to disregard the corporate fiction. *See id.* at 272-73. The Court explained the difference between the two types of fraud as follows:

> Actual fraud usually involves dishonesty of purpose or intent to deceive, whereas constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests.

*Id.* at 273 (quoting *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964)). Turning to the evidence, the Court stated:

> We hold that this is some evidence of a sham to perpetrate a fraud. A jury could find that Byboth and Branscum manipulated a closely-held corporation, Texan Transfer, and formed competing businesses to ensure that Castleberry did not get paid. Castleberry had little choice but to sell his shares back to the corporation. While this evidence may be no evidence of intentional fraud, constructive fraud, not intentional fraud, is the standard for disregarding the corporate fiction on the basis of a sham to perpetrate a fraud.

Tex. Bus. Orgs.Code Ann. § 21.223(B). This statutory provision has abrogated *Castleberry* insofar that actual fraud, not constructive fraud, is required to disregard the corporate form. *SSP Partners*, 275 S.W.3d at 455.

*Id.* at 275. Thus, although the *Castleberry* Court questioned whether "intentional fraud" had been established, it affirmed the trial court's judgment on the basis of constructive fraud. *Id.* at 277.

*Castleberry* has been abrogated such that constructive fraud no longer suffices to demonstrate that use of the corporate structure was illegitimate. *See SSP Partners,* 275 S.W.3d at 455. Nevertheless, its comment that the evidence in that case "may be no evidence" of actual fraud undermines the majority's holding that the facts in this case are sufficient to prove actual fraud. The "fraud" that the majority perceives was "incorporating Crown Staffing, forfeiting Tryco's corporate charter, and transferring Tryco's assets to Crown Staffing to avoid execution of Robinson's judgment against Tryco." Majority op. at 507. These acts mirror those in *Castleberry,* where two businessmen created separate corporations and diverted assets and business to those corporations in order to avoid paying a debt to one of their former business partners. The majority has failed to distinguish *Castleberry* from this case.

The evidence is also legally insufficient to prove that the "actual fraud" in this case, whatever it may be, was undertaken primarily for the direct personal benefit of the Dixons or Crown Staffing. *See* TEX. BUS. ORGS.CODE ANN. § 21.223(b) (permitting disregard of corporate fiction when actual fraud was done "primarily for the direct personal benefit" of the corporate owner or affiliate). The majority does not address what evidence it believes is relevant to this requirement for disregarding the corporate fiction. The record contains no evidence concerning what benefit, if any, the alleged transaction provided to the Dixons or Crown Staffing, such as a transfer of assets to a personal account or payment of a personal debt. In the absence of such evidence, the judgment disregarding the corporate separateness of Tryco and the other defendants cannot stand.[6]

\* \* \*

The majority has substituted a "subjective perception of unfairness," *SSP Partners,* 275 S.W.3d at 455, for the showing that the Legislature and the Supreme Court of Texas require in order to disregard the corporate fiction: actual fraud perpetrated primarily for a direct personal benefit. I would hold that the evidence in this case is legally insufficient to support a finding that assets and business were transferred from Tryco to Crown Staffing with the purpose of perpetrating an actual fraud against Robinson primarily for the direct personal benefit of the Dixons and Crown Staffing.

I would hold that the evidence was legally insufficient to hold the Dixons and Crown Staffing liable for Tryco's debts on

---

6. *See Gollin v. Hoard Gainer Indus. Co.,* No. 01–03–00435–CV, 2005 WL 110374, at \*4–5 (Tex.App.-Houston [1st Dist.] Jan 20, 2005, pet. denied) (mem. op.) (holding that evidence that CEO's salary increased after company accepted merchandise on credit was not legally sufficient evidence of direct personal benefit from transaction); *Shook v. Walden,* 368 S.W.3d 604, 621–22 (Tex.App.-Austin 2012, pet. filed) (holding that evidence that individual was primary investor in LLC and only one of two members did not raise inference that LLC's alleged actual fraud was committed for his direct personal benefit); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 388–89 (Tex. App.-Houston [14th Dist.] 2007, no pet.) (holding that because record did not show what corporation's owner did with money advanced to his corporation, "including, for example, whether he deposited [the money] into his personal account or used them to purchase personal items or to pay personal debts," the evidence was legally insufficient to support a finding of direct personal benefit).

a corporate veil-piercing theory. Accordingly, I would sustain the first issue.

## II. Loss of corporate privileges

Although not addressed by the majority opinion because of their resolution of the veil-piercing claim, there was a separate basis alleged at trial to hold James and Sharon Dixon liable for the judgment against Tryco.[7] In their third issue, James and Sharon Dixon contend that they cannot be held liable for Tryco's debt on Robinson's theory that Tryco forfeited its corporate privileges and Section 171.255 of the Tax Code provides for the personal liability of corporate directors and officers in such a case. *See* TEX. TAX CODE ANN. § 171.255 (West 2008). The Dixons argue that the statutory provision imposes personal liability for debts created or incurred after the forfeiture of corporate privileges, but "all of the operative facts giving rise to the alleged debt oc-

curred at least two to three years before the corporate privileges were forfeited."

In response, Robinson argues that "in this matter the debts and penalties incurred were part of a statutory scheme and the penalty imposed was permissive, thus no debt existed until the judgment was entered after the forfeiture." He relies on *Cain v. State*, 882 S.W.2d 515 (Tex. App.-Austin 1994, no writ), for the proposition that because Robinson's claims were premised on the federal Fair Labor Standards Act, Tryco incurred the debt when the original judgment was entered, after the forfeiture of its corporate privileges. The parties do not dispute—and the evidence adduced at trial does not contradict—the operative facts that Robison's employment at Tryco ended in 2000, the event giving rise to the forfeiture of corporate privileges occurred sometime thereafter, and the judgment in the original suit was entered after that.[8]

7. Robinson did not plead Section 171.255 of the Tax Code as basis for recovery against the other defendants, Troy Dixon or Crown Staffing. Accordingly, insofar as the judgment against them might have been premised on this theory of recovery, the judgment was erroneous. *See* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings. . . ."). Moreover, there was no evidence that Troy Dixon or Crown Staffing was ever an officer or director of Tryco.

8. The parties apparently assume that Tryco forfeited its corporate privileges a few weeks before Robinson obtained the judgment in the original suit, on August 22, 2003, and that under Section 171.255 James and Sharon Dixon became liable for Tryco's debts created or incurred after that date. However, both the record and the law refute their assumption.

At trial, Robinson presented an order of the Secretary of State, dated August 22, 2003, forfeiting Tryco's certificate of authority, and the trial court took judicial notice of the order. The order states that Tryco "has not revived its forfeited privileges within 120 days after the date that the corporation privileges were forfeited." By logical im-

plication of this finding, the order reflects that Tryco's corporate privileges must have been forfeited at least 120 days before August 22.

Moreover, the date that the corporate privileges were forfeited was not likely the same date on which the report, tax, or penalty occasioning the forfeiture had been due, *see* TEX. TAX CODE ANN. § 171.255(a) (West 2008), as the statutory procedures authorizing forfeiture in such circumstances require that the Comptroller of Public Accounts provide the corporation with notice at least 45 days before the forfeiture. *See* TEX. TAX CODE ANN. §§ 171.251, 171.256. The directors or officers of a corporation become liable for the corporation's debts on the date after the report, tax, or penalty is due but not filed or paid. *See Tri–State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 251 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (holding that official list of corporations whose corporate privileges were suspended is not proof of the "relevant date" under Section 171.255 for when report, tax, or penalty was due); *Dae Won Choe v. Chancellor, Inc.*, 823 S.W.2d 740, 743 (Tex.App.-Dallas 1992, no writ) (holding that personal

Section 171.255 of the Tax Code provides in relevant part:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

Tex. Tax Code Ann. § 171.255(a). In this provision, the meaning of "create" is "to bring into existence something which did not exist," while "incurred" means "brought on," "occasioned," or "caused." *See Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79, 81 (1946) (interpreting predecessor statute). At all times during Robinson's employment at Tryco through the entry of the judgment in the original suit, the Tax Code's chapter on franchise taxes defined "debt" as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735, *repealed by* Act of May 19, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 24 (effective Jan. 1, 2008); *see also Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 869 (Tex. App.-Houston [14th Dist.] 2010, no pet.) (applying foregoing definition of "debt" to Section 171.255); *Cain*, 882 S.W.2d at 516 n. 1 (same). "In determining whether a debt has been created or incurred, a court should strictly construe this statutory language to protect individuals against whom recovery of such quasi-penal damages is sought." *McKinney v. Anderson*, 734 S.W.2d 173, 174 (Tex.App.-Houston [1st

liability of corporate director or officer starts after the date on which corporation

Dist.] 1987, no writ) (citing *Schwab*, 198 S.W.2d at 81). Moreover, it is Robinson's burden to prove that the debts for which he seeks to hold James and Sharon Dixon liable under Section 171.255 were created or incurred after the date of the event occasioning the forfeiture of Tryco's corporate privileges. *See Wilburn v. State*, 824 S.W.2d 755, 763 (Tex.App.-Austin 1992, no writ).

The original judgment reflects that Robinson was awarded $58,349.00 for unpaid wages, $58,349.00 for "willful violation of the Fair Labor Standards Act," $16,558.75 for attorney's fees, $603.00 for expenses, and $457.00 for costs of court. Because each of these amounts was assessed for a different purpose, each must be considered separately to determine the dates upon which they met all the conditions of a debt for which a corporate director or officer may be held liable under Section 171.255. Each part of the award became a debt for the purposes of Section 171.255 when it was (1) a certain amount of money (2) created or incurred as (3) a legally enforceable obligation (4) which must be performed or paid within an ascertainable period of time or on demand. *See* Tex. Tax. Code Ann. § 171.255; Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735.

Tryco's liability to Robinson arose out of its failure to pay him overtime compensation pursuant to the federal Fair Labor Standards Act. *See* 29 U.S.C. § 207(a)(2) (providing that non-exempt employee working longer than 40 hours per week shall receive "compensation for his employment in excess of [40 hours] specified at a rate not less than one and one-half times the regular rate at which he is employed"). The "penalties" section of the FLSA provides, in relevant part:

was required to file a report or pay a tax or penalty that was due).

Any employer who violates the [overtime pay provision] of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b). In interpreting the FLSA's provisions, we follow the relevant precedents of the United States Supreme Court and the Supreme Court of Texas, and we may also look to the precedents of other federal courts for guidance. *Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993).

### A. Unpaid overtime compensation

As to the $58,349.00 award for unpaid overtime compensation, the original judgment implies—and the parties apparently assume—that Robinson, who worked as a van driver for Tryco, was a non-exempt employee who benefited from the overtime compensation provisions of the FLSA.[9] The "unpaid overtime compensation" due under the FLSA, *see* 29 U.S.C. § 216(b), is equal to the number of overtime hours that Robinson worked multiplied by his "regular rate" multiplied by one and a half times. *See* 29 U.S.C. § 207(a)(2)(C); 29 C.F.R. § 778.107. This was a "certain amount of money," *see* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735, even though to arrive at the amount of overtime compensation owed to Robinson one needs to know facts about when he worked and what his regular rate was. *Cf. Dae Won Choe,* 823 S.W.2d at 743–44 (remanding Section 171.255 action to determine fact question regarding amount of debt that corporation incurred on a services contract after non-payment of franchise tax). Furthermore, "[i]t is well settled that [a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050 (5th Cir.1973) (internal quotation marks omitted); *see also Dent v. Cox Commc'ns Las Vegas, Inc.,* 502 F.3d 1141, 1144 (9th Cir.2007) ("A new cause of action accrues at each payday immediately following the work period for which compensation is owed."); *Knight v. Columbus,* 19 F.3d 579, 581 (11th Cir.1994) ("Each failure to pay overtime constitutes a *new* violation of the FLSA."). If a new cause of action accrued on each payday that Robinson was not paid the overtime compensation owed to him, it follows that on such paydays he

---

9. The FLSA provides for classes of employees who are exempt from the overtime pay provision. *See* 29 U.S.C. § 213(a), (b) (listing classes of exempt employees); *Cowart v. Ingalls Shipbuilding, Inc.,* 213 F.3d 261, 264 (5th Cir.2000) (recognizing that FLSA exempts salaried employees working in bona fide executive, administrative, or professional capacity). Were Robinson an employee exempt from the FLSA's overtime provision, he would have had no basis for recovery under the FLSA for unpaid overtime compensation. *See Cowart,* 213 F.3d at 267 (finding that salaried administrative employees were exempt from the overtime compensation provision and affirming summary judgment against them).

acquired a "legally enforceable obligation" that was payable "on demand." *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735.

By state statute, Tryco was required to pay non-exempt employees like Robinson at least twice a month. *See* Tex. Lab.Code Ann. § 61.011(b) (West 2006); *see also Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 81–82 (Tex.2008) (observing that payday law "requires private employers of all types and sizes to pay wages owed to employees in full, on time, and on regularly scheduled paydays" (footnotes omitted)). Robinson's last payment should have been made either six days after the date that his employment ended or not later than the next regularly scheduled payday. *See* Tex. Lab.Code Ann. § 61.014. Thus, Tryco first incurred the debt for unpaid overtime compensation on each respective payday or, with respect to the overtime that Robinson worked during his last work period, on a date shortly after his termination. The fact that those debts were later aggregated and reduced to a judgment does not mean that Tryco "incurred" the $58,349.00 for unpaid wages on the date of the judgment. *Cf. McKinney*, 734 S.W.2d at 175 (holding that corporation incurred debts on the date that equipment lease was executed even though lease was payable in installments). Because Tryco incurred the debt for Robinson's unpaid overtime compensation before the date of the event occasioning the forfeiture of its corporate privileges, I would hold that James and Sharon Dixon are not liable under Section 171.255 for Robinson's unpaid overtime wages.

**B. Liquidated damages**

Robinson's other award of $58,349.00 was "for willful violation of the Fair Labor Standards Act." For employers that violate the FLSA's overtime requirements, Section 216 prescribes additional liquidated damages equal to the amount of the unpaid overtime compensation. *See* 29 U.S.C. § 216(b). Such liquidated damages are the norm and have been characterized as "mandatory." *See, e.g., Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir.2004); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3rd Cir.1991). However, "Congress has provided the courts with some discretion to limit or deny liquidated damages." *Martin*, 381 F.3d at 584 (citing 29 U.S.C. § 260); *see also Lee v. Coahoma Cnty.*, 937 F.2d 220, 227 (5th Cir.1991) (observing that "even if the district court determines that the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages"). Section 260 of the FLSA provides:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. This provision means that "[i]f the district court finds that [the] employer's action which violated the FLSA was taken in good faith, which good faith was supported by reasonable grounds for believing that the actions complied with the FLSA, it may choose not to award liquidated damages." *Lee*, 937 F.2d at 226–27; *accord Martin*, 381 F.3d at 584. Although Section 171.255 is strictly construed in favor of James and Sharon Dixon as Tryco's corporate officers, *see McKinney*, 734 S.W.2d at 174, it is apparent that the trial court's discretion to award liquidated damages means that such damages

were not a "certain amount of money" until the date of the judgment. *See Taylor*, 316 S.W.3d at 869 (holding that damages incurred by corporation for breach of contract were not a "certain amount of money" on the date that the contract was executed because no money was then owed nor had breach occurred); *Jonnet v. State*, 877 S.W.2d 520, 523–24 (Tex.App.-Austin 1994, writ denied) (observing that "unlike situations in which the execution of a written instrument or a specific transaction creates an obligation or duty to pay for a later breach of the agreement, the obligation to pay the statutory penalty [for failing to plug inactive oil wells] *only arises* if and when a penalty is actually assessed."). Thus, the date that the judgment was rendered awarding Robinson $58,349.00 for liquidated damages was the date on which Tryco incurred that particular debt. Because the judgment was rendered after the event occasioning the forfeiture of corporate privileges, I would hold that James and Sharon Dixon are liable under Section 171.255 for this part of the award.

### C. Attorney's fees and other costs

As to the attorney's fees, expenses, and other costs awarded to Robinson, the FLSA provides such a recovery to a prevailing employee. *See* 29 U.S.C. § 216(b) ("The court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In contrast to the FLSA's authorization for liquidated damages, this type of award is truly mandatory. *See Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 603 F.3d 888, 893 & n. 1 (11th Cir.2010); *Singer v. City of Waco*, 324 F.3d 813, 829 n. 10 (5th Cir.2003); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir.2001). However, the trial court has "wide latitude" in determining these amounts because they involve factual issues. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir.1999). Thus, the amount of fees, expenses, and other costs to which Robinson was entitled did not become a "certain amount of money" until the date that the judgment was entered—a date after the event occasioning the forfeiture of Tryco's corporate privileges. *See Taylor*, 316 S.W.3d at 869; *Jonnet*, 877 S.W.2d at 523–24. Consequently, I would hold that James and Sharon Dixon are liable under Section 171.255 for Robinson's attorney's fees, expenses, and court costs.

\* \* \*

I would sustain James Dixon and Sharon Dixon's third issue, insofar as the judgment orders that they are liable for Robinson's unpaid overtime compensation. I would overrule their issue in all other respects, insofar that the judgment orders that they are liable for Robinson's liquidated damages, attorney's fees, expenses, and court costs.

